2025 IL App (2d) 240684-U
No. 2-24-0684
Order filed February 5, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2099 |
| IVAN MARTINEZ, | ) ) ) | Honorable Julia Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's finding that the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed a detainable offense was not against the manifest weight of the evidence. The trial court's denial of defendant motion for relief was not an abuse of discretion.

¶ 2   Defendant, Ivan Martinez, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (collectively the "Acts"). Defendant contends that the State failed to prove at the detention hearing that he was the

individual that committed the charged offenses. Additionally, defendant contends that the trial court erred by relying on facts outside the record in denying his motion for relief. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 23, 2024, the State charged defendant with aggravated vehicle hijacking with a firearm (720 ILCS 5/18-4(a)(4)), aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3), and vehicular hijacking (720 ILCS 5/18-3(a)). An arrest warrant was issued and defendant was apprehended by the Aurora Police Department on October 3, 2024. That same day, the State filed a verified petition to deny defendant pretrial release pursuant to 725 ILCS 5/110-6.1 and a detention hearing was held before the trial court.

¶ 5     The State proffered a synopsis prepared by Detective Boyle of the Aurora Police related the following. On September 1, 2024, at approximately 9:15 a.m., Aurora police officers responded to a report of a motor vehicle hijacking that had occurred at a Dunkin' Donuts. The victim, I.B., was in the drive-thru line in her 2016 Chevrolet Camaro when she observed a suspicious person, dressed in all black, standing in the parking lot. After making her purchases, she saw the suspicious person running towards her with a black gun in his hand. He approached her driver's side window, pointed a gun at her head, and ordered her out of the vehicle. She tried to drive away but drove over a curb and stopped with the offender holding on to her car. She collected her personal items and exited the vehicle before the offender drove away in it.

¶ 6     A witness, M.J., observed the above-mentioned incident and captured it on his personal in-car dash camera. M.J. related that a male Hispanic displayed a handgun, pointed it to the victim's head, effectively carjacking her gray Chevrolet Camaro. M.J. then shortly gave chase to the Camaro in his vehicle. Officers observed the video from M.J.'s in-car dash camera which showed

a male Hispanic about 5'7-5'8 and 160-170lbs., wearing a black/white facemask, black pants, and a black sweater with a Nike logo on the left chest. The male runs up to I.B.'s vehicle, then begins to speed off, driving over a curb, and traveling northbound through the parking lot. M.J.'s in-car dash camera shows him following behind I.B.'s vehicle and shows I.B. outside of her vehicle on the driver's side and then her vehicle driving off northbound through the parking lot.

¶ 7    The Aurora Police Department Investigations Unit was ultimately notified that Chicago police located the victim's vehicle and took defendant into custody on September 1, 2024, at approximately 10:35 a.m. Defendant was wearing a black hooded sweatshirt with a Nike logo on the left chest, black pants and black shoes with a multi-colored sole. Defendant's clothes were seized as they appeared to be the same as those worn by the perpetrator from M.J.'s in-car dash camera.

¶ 8    The arresting Chicago police officers related that defendant exited the vehicle and ran on foot after being stopped. When apprehended and placed into custody, defendant was wearing the above-mentioned clothing, including a Nike face mask around his neck. The face mask was black with white lines and had a Nike emblem on the left side. The perpetrator depicted on the in-car dash camera video was wearing a black face mask with white lines. Defendant was also found in possession of a cell phone.

¶ 9    After securing a search warrant for the cell phone, Aurora police were able to track defendant's movements throughout the morning of September 1, 2024. At the time of the incident, defendant was shown to be in the area of the Dunkin' Donuts. After the incident, he was shown to be traveling towards Chicago. The synopsis further noted that video footage from numerous establishments in the areas traveled showed defendant wearing the same clothing as mentioned above. Chicago police body cam footage showed that the back right pocket of defendant's pants

had a white cloth tag. I.B. told Aurora police that she remembered observing the same white cloth tag on the back of the perpetrator's pants.

¶ 10    Over defendant's objection, the State also proffered a July 30, 2021, police synopsis relating defendant's arrest for aggravated unlawful use of a weapon when he was discovered driving with a loaded handgun without a FOID card. Defendant plead guilty and received a term of probation. The State proffered defendant's lengthy criminal history that included convictions for aggravated unlawful use of a weapon and manufacture/delivery of 115 grams of cocaine. At the time of the detention hearing, defendant was on mandatory supervised release for the drug conviction. Additionally, defendant has pending cases in Du Page County for DUI, DUI drugs, driving on a suspended license, and unlawful possession of cannabis by a driver. He also has pending cases in Cook County arising out of the September 1, 2024, incident for criminal trespass to vehicle, unlawful possession of cannabis by a driver, leaving the scene, and driving on a suspended license.

¶ 11    Following the State's proffer, defendant argued that the State failed to prove the perpetrator's identity by clear and convincing evidence. He averred that the State's proffer did not mention that defendant was wearing the shoes with the multi-colored soles or a shirt with a Nike logo when arrested. He further argued that the GPS data from his cell phone only put him in the area of the offense, not the specific location. Finally, he argued that the synopsis did not identify him as the driver, so he could have been the actual offender's passenger.

¶ 12    In granting the State's verified petition to detain defendant, the trial court made the following relevant findings:

"[A]lthough there's been some discussion of whether the identity of the Defendant, here, was properly accounted for in the synopsis and otherwise it's not a probable cause

hearing, as we know, which is clear and convincing evidence as to whether or not the first element is established under the dangerousness standard *** and that is whether the proof is evident or the presumption great that the Defendant committed the *** detainable offense, in this case the two Class X Aggravated Highjacking [*sic*] and Highjacking [*sic*] with a Firearm, as well as simple Highjacking [*sic*], Class 1. All of those are detainable offenses. In this case, the State has satisfied, to the Court's satisfaction, that there is sufficient evidence to meet the clear and convincing standard that the Defendant committed any one of these detainable offenses, if not all three. The synopsis does a good job of detailing both the statements from the victim, a third party witness who had a video dash cam that recorded the entire incident which gave *** consistent descriptions of the clothing that the Defendant was wearing from a hooded sweatshirt *** with a Nike logo on it which was observed, to a face mask that was black and white also with a Nike logo on it[.] [T]he synopsis also recounts that another time after Defendant committed the offense and was seen driving away by the third party witness on his dash cam through the parking lot, he was found in possession of the victim's vehicle; that the fact that there was no gun does not mitigate in the Court's mind the fact that the victim relinquished her vehicle as a result of the allegation that he had a firearm. *** He clearly had something threatening her. In this case, the Court finds by clear and convincing evidence that was a firearm. In addition, the Chicago Police Department notes, as does the Aurora Police Department's report as summarized in its synopsis, that when the Defendant was arrested, he was actually wearing a black and white face mask around his neck[.] [A]s to the notion that the GPS data wouldn't put him directly in the Dunkin' Donuts drive-thru, it's not *** known to be a hundred percent within a foot monitoring device. It has separate opportunities to contact

the phone and identify where the person is at. Being in the vicinity of that area, having been identified on video and by two separate witnesses is enough for the Court to believe that the evidence clearly shows by clear and convincing evidence that the Defendant committed these offenses."

¶ 13    Defendant filed a motion for relief pursuant to Rule 604(h)(2) arguing that the State failed to prove his identity by clear and convincing evidence. He further argued that the judge did not make any finding about why electronic home monitoring would not be a sufficient condition to mitigate his dangerousness. In denying the motion, the trial court reiterated its findings as to defendant's identity. The trial court also found that defendant would not likely follow any conditions of release as he was already not allowed to possess a weapon yet pointed a handgun at I.B.'s head before stealing her vehicle. The trial court stated that the imposition of monitoring through court services "is on an in-person basis as needed, a monthly or greater than monthly basis by telephone. That is not the level of monitoring that this Court finds would be sufficient to mitigate the real and present threat."

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    In this appeal, defendant contends that the State failed to prove his identity as the perpetrator and thus failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed a detainable offense. Additionally, defendant contends that the trial court improperly went outside the record when making its findings to deny his motion for relief.

¶ 17    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-

1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 18    We apply a two-part standard of review to a trial court's decision to detain a defendant. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat or a high likelihood of willful flight, and whether any conditions would mitigate any threat or the risk of willful flight. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite to that of the trial court is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 19     We first note that defendant only challenges the trial court's analysis as to the first element required for detention. Specifically, he claims that the State failed to prove that he was the individual who committed the charged offenses. Accordingly, we limit our analysis to the evidence proffered on that issue alone.

¶ 20     As argued at the detention hearing and in his motion for relief, defendant insists here that the State's proffer was insufficient to prove his identity because (1) the witness descriptions and dashcam videos failed to describe or depict his shoes with multi-colored soles; (2) officers never explained how they identified defendant; (3) no gun was recovered; and (4) GPS data linked his cell phone to the general area of the offense, not the specific location, suggesting defendant was merely a passenger in the stolen vehicle.

¶ 21     Defendant's contention on this issue is unconvincing. The State's proffer and the trial court's findings reflect that defendant was found driving the stolen vehicle while wearing clothes that matched the descriptions of both the victim and those depicted in the dashcam video. His cell phone data indicated that he was in the area of the Dunkin' Donuts when the offenses were committed. The cell phone data also indicated that he drove the stolen vehicle towards Chicago immediately after the offenses were committed. When pulled over by Chicago police officers, defendant attempted to flee. There is no indication from the record that any other person was driving the vehicle. The opposite conclusion to the trial court's is unfathomable. Therefore, its finding that the State's proffer was sufficient to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the qualifying offenses was not against the manifest weight of the evidence.

¶ 22     We move to defendant's contention that the trial court erred in denying his Rule 604(h)(2) motion for relief because its findings relied on facts outside the record. He argues that the trial

court was inaccurate when it stated that "monitoring is on an in-person basis as needed, a monthly or greater than monthly basis by telephone. That is not the level of monitoring that this Court finds would be sufficient to mitigate the real and present threat." Further, defendant argues that the trial court misread the law when it found that defendant's actions, displaying a weapon and pointing it at I.B.'s head, made it impossible to predict whether he would follow any conditions placed upon him by the court.

¶ 23    Rule 604(h)(1) dictates the four ways in which an appeal may be taken to this court from an interlocutory order of the trial court entered under sections 110-5, 110-6, and 110-6.1 of the Code, and they are as follows:

"(i) by the State and by the defendant from an order imposing conditions of pretrial release;

(ii) by the defendant from an order revoking pretrial release or by the State from an order denying a petition to revoke pretrial release;

(iii) by the defendant from an order denying pretrial release; or

(iv) by the State from an order denying a petition to deny pretrial release." Ill. S. Ct. R. 604(h)(1) (eff. April 15, 2024).

¶ 24    Rule 604(h)(2) states as follows in regard to defendant's motion for relief:

"As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024).

¶ 25    Defendant's motion for relief functions as a mechanism to narrow the issues for his appeal from the initial order granting the State's verified petition to detain pursuant to section 110-6.1 of the Code. His motion for relief challenged, inter alia, the identity issue discussed above, and whether the trial court erred in ruling that no conditions exist that would mitigate the threat he poses "because it did not make any finding about why EHM would not be the least restrictive individualized condition of release." Whether the trial court's findings on his motion for relief were outside the record or based on an alleged misreading of the law is a nonevent for the purposes of this appeal. This court reviews the issues preserved through defendant's Rule 604(h)(2) motion for relief, predicated on an order denying his pretrial release. Ill. S. Ct. R. 604(h)(1), (2) (eff. April 15, 2024). Even if we were to agree with defendant that the trial court's statements were made in error as he argues here, we may affirm the trial court's judgment on any basis that appears in the record. *People v. Crowder*, 323 Ill. App. 3d 710, 712 (2001).

¶ 26    Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g). If the trial court finds that the State proved a valid threat to someone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the

criminal justice process. *Id.* No single factor is dispositive. *Id.* We review the trial court's findings regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 27 At defendant's detention hearing, the trial court considered every factor enumerated above. It found that (1) the charged conduct is of they type that is a threat to the public; (2) the conduct was an intentional, random act of violence aimed at I.B. when she was at her most vulnerable; (3) defendant has an extensive criminal history; (4) the charged conduct involved the use of a firearm; (5) defendant was on mandatory supervised release at the time of the charged conduct; (6) defendant knew he couldn't possess a firearm yet did so anyway; (7) defendant is not only a threat to I.B., but to the public in general. The trial court also was apprised that defendant's public safety assessment report rated him as a 5 out of 6 on the new criminal activity scale, and a 3 out of 6 on the failure to appear scale. Again, this court can affirm the trial court's judgment on any basis that appears in the record, and it is clear from the record that its findings were not against the manifest weight of the evidence. The trial court's order granting the State's verified petition to detain was not an abuse of discretion.

¶ 28                                III. CONCLUSION

¶ 29 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 30 Affirmed.